IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| | CASE NO. 1:12-bk-06672-RNO |
| JOSEPH P. MAUZ | |
| | CHAPTER 7 |
| Debtor | |
| ****************************** | ****************************************** |
| WILLIAM A. LINK | |
| KIMBERLY A. LINK | |
| Plaintiffs | |
| v. | |
| JOSEPH P. MAUZ | |
| Defendant | ADVERSARY NO. 1:13-ap-00053-RNO |

# OPINION[1]

Plaintiffs, William A. Link and Kimberly A. Link (collectively "Plaintiffs"), commenced the instant Adversary Proceeding against Joseph P. Mauz ("Debtor"). The Plaintiffs brought the present Adversary Proceeding to determine the dischargeability of a debt allegedly caused by the intentional infliction of emotional distress. After trial, I conclude that the debt owed to the Plaintiffs is excepted from discharge under 11 U.S.C. § 523(a)(6).[2]

**I.      Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(I).

---

[1]     Drafted with the assistance of William J. Schumacher, Esq., Law Clerk.

[2]     Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

## II. Facts and Procedural History

A more complete procedural history and recitation of the facts may be obtained by reviewing two prior decisions in this Adversary Proceeding, *In re Mauz*, 496 B.R. 777 (Bankr. M.D.Pa. 2013) and *In re Mauz*, 513 B.R. 273 (Bankr. M.D.Pa. 2014). The procedural history from the prior Opinions is incorporated by reference.

For purposes of this Opinion, I offer the following procedural and factual background. A voluntary petition under Chapter 7 of the Bankruptcy Code was filed on November 19, 2012, by the Debtor. The Debtor filed his schedules of assets and liabilities. Schedules A through J and Summary of Schedules, December 17, 2012, ECF No. 27. The Chapter 7 Trustee filed a report of no distribution on October 27, 2014. Chapter 7 Trustee's Report of No Distribution, October 27, 2014, ECF No. 134.

The present Adversary Proceeding was commenced by a single count Complaint on March 7, 2013, based on a claim of willful and malicious injury. Subsequently, both the Debtor and Plaintiffs filed Motions for Summary Judgment. Plaintiffs' Motion for Summary Judgment, May 21, 2013, ECF No. 12; Debtor's Motion for Summary Judgment, June 27, 2013, ECF No. 17. The parties briefed the Motions for Summary Judgment and I issued an Opinion denying the Debtor's Motion for Summary Judgment and granting in part and denying in part the Plaintiffs' Motion for Summary Judgment. *In re Mauz*, 496 B.R. at 784. I granted the Plaintiffs' Motion for Summary Judgment as to the alleged assault and battery claim and held that the damages for the assault and battery were nondischargeable under § 523(a)(6). *Id*. However, I denied the Plaintiff's Motion for Summary Judgment as to the alleged claims for trespass and intentional infliction of emotional distress and punitive damages. *Id*.

On February 6, 2014, the Plaintiffs then filed a Motion to Amend their Complaint, which included a proposed two count Amended Complaint. Amended Complaint with Motion for Leave to File Amended Complaint, February 6, 2014, ECF No. 39. The Debtor filed an Answer to the Motion for Leave to File Amended Complaint. Answer to Motion for Leave to File Amended Complaint, February 19, 2014, ECF No. 44. I issued an Opinion, after briefing and hearings on the Motion for Leave to File an Amended Complaint, granting the Plaintiffs' Motion to Amend their Complaint to the extent that it amended Count I, the nondischargeability portion, and denying the Motion to Amend the Complaint to the extent it sought to add an objection to discharge. *In re Mauz*, 513 B.R. at 282.

The Amended Complaint, thereafter, contained only Count I, a Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6). Amended Complaint, June 16, 2014, ECF No. 63. The Amended Complaint consists of twelve numbered paragraphs and four exhibits. Amended Complaint, June 16, 2014, ECF No. 63. Exhibit A is a copy of the twenty-two-page complaint from litigation between the parties in the Court of Common Pleas of York County, Pennsylvania ("State Court Action"). *Id*. Exhibit B is a copy of the twenty-three-page non-jury trial verdict entered in the State Court Action. *Id*. Exhibit C is a two-page punitive damages order entered in the State Court Action. *Id*. Exhibit D is a three-page post-trial order entered in the State Court Action. *Id*. The Debtor filed an Answer to the Amended Complaint. Answer to Amended Complaint, June 19, 2014, ECF No. 64.

The Amended Complaint alleges that, pursuant to § 523(a)(6), the state court judgment obtained against the Debtor is nondischargeable because of the intentional infliction of emotional distress. *Id*. After discovery and a pre-trial conference held on October 6, 2014, I issued a

3

Case 1:13-ap-00053-RNO    Doc 106    Filed 06/30/15    Entered 06/30/15 14:48:49    Desc
Main Document    Page 3 of 16

Pretrial Order approving the parties' stipulation as to what issues remained for trial. Pre-Trial Order, October 6, 2014, ECF No. 84.

The sole issue remaining for trial, pursuant to the parties' stipulation, was whether or not the Debtor undertook the actions complained of with the requisite intent to sustain a finding of nondischargeability pursuant to § 523(a)(6). *Id*. The monetary amount of the Plaintiffs' claims against the Debtor was, therefore, not at issue in the trial of this Adversary Proceeding and the parties agreed that it was an all or nothing proposition. *Id*. The trial began on February 20, 2015, and was concluded on May 1, 2015. Thereafter, I took the matter under advisement.

The matter is now ripe for decision and my holding is limited to whether or not the Debtor undertook the actions complained of with the requisite intent to sustain a finding of nondischargeability pursuant to § 523(a)(6).

**III.    Discussion**

    **A.    General Elements to Prove a Nondischargeability Claim**

In a nondischargeability proceeding, the bankruptcy court must address two separate questions. First, does the plaintiff/creditor hold an enforceable obligation under state law? Second, is the debt nondischargeable under a provision of the Bankruptcy Code? *Black v. Gigliotti*, 514 B.R. 439, 444 (E.D.Pa. 2014); *In re August*, 448 B.R. 331, 346 (Bankr. E.D.Pa. 2011). A bankruptcy court looks to state law to determine whether or not there is an enforceable claim against the debtor. *In re Hazelton*, 304 B.R. 145, 150 (Bankr. M.D.Pa. 2003).

As noted above, Exhibit A was filed with the Amended Complaint. Exhibit A is a complaint filed by the Plaintiffs in the State Court Action. Exhibit B was also filed with the Amended Complaint and is a non-jury trial verdict entered in the State Court Action. The state

4

Case 1:13-ap-00053-RNO    Doc 106    Filed 06/30/15    Entered 06/30/15 14:48:49    Desc
Main Document      Page 4 of 16

court found in favor of the Plaintiffs and against the Debtor for, among others, the intentional infliction of emotional distress, which is the only count at issue in this Adversary Proceeding, based on the Amended Complaint.

A determination of whether the Plaintiffs have met their burden concerning an enforceable obligation will ultimately be based upon Pennsylvania law. However, it is important to remember that the Bankruptcy Code broadly defines the term "claim." Section 101(5), in part, provides the term means: "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 105(5). The Supreme Court stated that the term "claim," has the "broadest available definition . . . ." *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302, 123 S. Ct. 832, 839, 154 L. Ed. 2d 863 (2003); *also see*, *In re Ruitenberg*, 745 F.3d 647, 651–53 (3d Cir. 2014); *In re Grossman's Inc.*, 607 F.3d 114, 121 (3d Cir. 2010).

In this case, the Plaintiffs' claim is based on a state court judgment finding, in part, that the Debtor was liable for the intentional infliction of emotional distress. Pennsylvania recognizes the tort of intentional infliction of emotional distress. *Corbett v. Morgenstern*, 934 F.Supp. 680, 684 (E.D.Pa. 1996). Under Pennsylvania state law, the gravamen of the tort of intentional infliction of emotional distress is outrageous conduct by the tortfeasor. *Corbett v. Morgenstern*, 934 F.Supp. at 684; *Hoy v. Angelone*, 554 Pa. 134, 150 (Pa. 1998). A tortfeasor who by "extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another" is liable for such emotional distress. *Hoy v. Angelone*, 554 Pa. at 150. Thus, a court must find egregious conduct before a tortfeasor is liable for the intentional infliction of

5

Case 1:13-ap-00053-RNO    Doc 106    Filed 06/30/15    Entered 06/30/15 14:48:49    Desc
Main Document      Page 5 of 16

emotional distress. *Id*. at 151.

Here, the state court found that the Debtor engaged in a course of conduct which, as a whole, rose to the level of intentional infliction of emotional distress. Amended Complaint, Exhibit B, June 16, 2014, ECF No. 63. That course of conduct included the Debtor filing ten complaints against the Plaintiffs in the Court of Common Pleas of York County, Pennsylvania. Plaintiffs' Trial Ex. 27, electronic page 127-28. The alleged complaints by the Debtor against the Plaintiffs were for: (1) harassment; (2) ejectment to locate a boundary line and a claim for damages; (3) harassment; (4) disorderly conduct; (5) damages from storm water runoff; (6) conversion of a pool cover; (7) conversion of a tow chain; (8) violation of a barking dog ordinance; (9) violation of a barking dog ordinance; and (10) harassment. *Id*. The Plaintiffs were found not guilty, the claims were dismissed, or the claims were withdrawn in nine of the ten complaints. *Id*. A default judgment was entered against the Plaintiffs in the boundary line dispute case. That judgment effectively determined the property line between the Debtor and Plaintiffs, who are adjoining property owners. *Id*. Additionally, the Debtor made over thirty complaints against the Plaintiffs to the Northern Regional Police Department ("Police") and the Manchester Township municipal offices ("Township"). Plaintiffs' Trial Ex. 30, electronic page 155. Most of the complaints, from the evidence introduced at the two days of trial before this Court, appeared to be unsupported, were ultimately dropped, or resulted in no charges against the Plaintiffs. *Id*.

Next, I will briefly analyze the testimony and exhibits produced at trial to determine the dischargeability of the claim for the intentional infliction of emotional distress in a § 523(a)(6) context.

6

First, as shown above, Debtor filed an outrageous number of complaints in the Court of Common Pleas, to the Police, and to the Township. The trial record established that these cumulative complaints were filed for the purpose of causing the Plaintiffs emotional distress. This conduct reaches the level of egregious behavior of the kind that the court in *Corbett* found would create liability for the intentional infliction of emotional distress.

Second, although the Debtor testified at trial that his purpose behind the vexatious litigation against the Plaintiffs was because they were not "following the rules", I am not swayed by this argument. For example, the Debtor alleges that several of his complaints to the Township were because the Plaintiffs did not comply with local zoning requirements in building a fence. However, the Plaintiffs produced evidence at trial that they did procure a permit for the fence and that the Township did not find a violation of the zoning ordinance.

Third, the Debtor himself failed to follow proper channels and seek administrative or judicial relief and instead utilized self-help and damaged the Plaintiffs' fence posts. Plaintiffs' Trial Ex. 42, electronic page 330. The Debtor was found guilty in the Court of Common Pleas of York County for "Criminal Mischief – Damage Property [sic]." *Id*. If the Debtor truly thought the permit was in error, he could have appealed the Plaintiffs' permit for the fence through appropriate administrative and judicial avenues. Thus, I give little credence to the Debtor's proffer that his behavior was the result of attempts to get the Plaintiffs to "follow the rules" when he failed to do so himself.

Fourth, the transcript of Mrs. Denise Mauz's testimony from the State Court Action was read into the record. Her testimony provides some insight into the Debtor's intentions. Mrs. Mauz testified that she did not even know about an action filed against the Plaintiffs and in

7

which she was named as a party. She found the actions taken by the Debtor to be "ridiculous" and stated that the Debtor's conduct toward the Plaintiffs, their neighbors, was "constant." Essentially, Mrs. Mauz's testimony substantiates the Plaintiffs' contention that the Debtor created a feud with the Plaintiffs and sought to continuously harass them. Mrs. Mauz's testimony supports the Plaintiffs' allegations that the Debtor acted intentionally.

Fifth, the Plaintiffs also alleged that an invoice produced by the Debtor from Barhyte Associates, purported surveyors, for a boundary line survey was a false document and was evidence of the intentional conduct of the Debtor. However, I cannot find that the Plaintiffs met their burden to support the proffer that the invoice is evidence of an intent to injure the Plaintiffs. There was insufficient evidence that the invoice was or was not falsified. Therefore, I will not consider the Barhyte invoice in my analysis of the Plaintiffs' burden under § 523(a)(6).

As the court in *Corbett* stated, intentional infliction of emotional distress can be found where, on recitation of the facts in the case, "an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Corbett v. Morgenstern*, 934 F.Supp. at 684. I conclude that such a recitation of the facts as a whole exists here. An average member of the community would determine that the Debtor's course of conduct over several years reached an egregious level sufficient for liability to attach from the intentional infliction of emotional distress.

The Debtor acted intentionally through spurious complaints to drive the Plaintiffs from their home, and in fact, during the Debtor's testimony, he stated that if the Plaintiffs could not conform to the rules and regulations, they did not deserve to live in the neighborhood. Again, I cannot find from the record that the Debtor had any basis for his argument that the Plaintiffs

8

were not substantially conforming to the rules and regulations because, from my review of the record from trial, the Township never cited the Plaintiffs for a violation of the rules and regulations. Mrs. Mauz's testimony also provides insight into the Debtor's actions. Her testimony demonstrates that the Debtor's harassment of the Plaintiffs was "constant." From the evidence and testimony produced at trial, it is evident that the Debtor intended to cause the Plaintiffs emotional distress as a means to force the Plaintiffs from the neighborhood.

Thus, I find that the Plaintiffs hold an enforceable obligation under state law against the Debtor for the intentional infliction of emotional distress. This is represented by the state court non-jury verdict in the amount of $217,100.00. Having determined that the Plaintiffs hold enforceable claims, I will therefore proceed to consider whether the Plaintiffs met their burden of proving, by a preponderance of the evidence, that their claim is nondischargeable under § 523(a)(6) for willful and malicious injury to the Plaintiffs.

### B. Requirements to Prove Nondischargeability Under § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The elements under § 523(a) must be proven by a preponderance of the evidence. *In re Gotwald*, 488 B.R. 854, 865 (Bankr. E.D.Pa. 2013). Claims based on the "intentional infliction of emotional distress . . . have typically been held nondischargeable." 4-523 Collier on Bankruptcy P 523.12. However, before I can reach that conclusion, I must first analyze whether or not the actions taken by the Debtor were willful and malicious.

An action is "willful" if it is intended to injure another party or has a substantial certainty of producing injury. *In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994); *In re Webb*, 525 B.R. 226,

9

232 (Bankr. M.D.Pa. 2015). The plaintiff must establish that the debtor "purposefully inflict[ed] the injury or act[ed] in such a manner that he is substantially certain that injury will result." *In re Gotwald*, 488 B.R. at 865 (internal citations omitted).

The maliciousness requirement has been interpreted differently for nondischargeability purposes than in other legal contexts. Proof of malice in this context does not require that the debtor act with subjective ill will toward the plaintiff/creditor. *Id*. at 866. It does require a showing that the injury was wrongful and without just cause. *In re Bayer*, 521 B.R. 491, 501 (Bankr. E.D.Pa. 2014); *also see*, *In re Grasso*, 497 B.R. 434, 445 (Bankr. E.D.Pa. 2013); *In re Adalian*, 474 B.R. 150, 163 (Bankr. M.D.Pa. 2012).

To determine whether or not a debtor's actions are willful and malicious, a court must examine the debtor's state of mind at the time he acted to produce the injury. *In re Webb*, 525 B.R. at 233. In the Third Circuit, most courts utilize the subjective standard to determine the intent of the debtor. *Id*. At a minimum, when using the subjective approach, a court must find that the debtor had actual knowledge that harm to the creditor is substantially certain to occur. *Id*. Circumstantial evidence may be used to assist in the analysis of what the debtor was actually thinking or actually knew at the time he acted. *Id*.

Next, I will consider the Debtor's subjective state of mind to determine the Debtor's intent.

### 1. Were the Debtor's actions willful?

The Plaintiffs allege that the Debtor's actions were "willful" under § 523(a)(6) because the Debtor knew that his actions were causing the Plaintiffs emotional distress, or at least that he intended his actions to cause emotional distress and force the Plaintiffs to move from the

neighborhood. At trial, the Plaintiffs offered voluminous exhibits and testimony about the Debtor's actions. It is clear from the evidence that the Debtor intended to injure the Plaintiffs.

First, it was not contradicted that the Debtor filed ten complaints in the Court of Common Pleas of York County and made over thirty complaints to the Police and Township officials. Again, the majority of the claims were ultimately dropped and resulted in no charges or citations against the Plaintiffs. The Third Circuit noted that, in the case of malicious prosecution, when a jury finds that a party brought an action without probable cause, this finding precluded the party from claiming that there was not substantial certainty that his actions would cause injury. *In re Conte*, 33 F.3d at 309 n.3.

I recognize that the judgment in the State Court Action did not find the Debtor liable for malicious prosecution or wrongful use of civil proceedings. However, I find that the Debtor's numerous and vexatious complaints, which resulted in no charge or citations against the Plaintiffs, are circumstantial evidence that the Debtor's conduct was substantially certain to produce injury under the *In re Conte* formulation of willful injury.

Second, even if the vexatious litigation against the Plaintiffs did not rise to the level of willful conduct by the Debtor, the Debtor intentionally damaged the Plaintiffs' fence posts. Plaintiffs' Trial Ex. 42, electronic page 330. As noted above, the Debtor was found guilty in the Court of Common Pleas of York County for "Criminal Mischief – Damage Property [sic]." *Id*. From the evidence offered at trial, the uncontroverted testimony and exhibits, I find that the Debtor's destruction of the fence posts was a willful act which carried out the Debtor's intent to cause harm to the Plaintiffs.

Third, Mrs. Mauz's testimony also shows that the Debtor was constant in his harassment

11

Case 1:13-ap-00053-RNO    Doc 106    Filed 06/30/15    Entered 06/30/15 14:48:49    Desc
Main Document    Page 11 of 16

of the Plaintiffs. His conduct did not stop, and Mrs. Mauz was often unaware of his actions against the Plaintiffs. However, from what she was aware, she found his actions to be ridiculous and without cause. This testimony is additional evidence that adds weight to the Plaintiffs' allegation that the Debtor acted willfully.

Fourth, the Debtor continued his course of conduct against the Plaintiffs after they had filed their complaint in the State Court Action on November 9, 2007. For example, the Debtor filed a counterclaim for adverse possession, wrongful use of civil proceedings, intentional infliction of emotional distress, trespass, loss of property value, and a request for injunctive and other equitable relief against the Plaintiffs in the State Court Action. Plaintiffs' Trial Ex. 24, electronic page 103. Then, the Debtor filed praecipes to discontinue the counterclaims in the State Court Action on June 24, 2009, and November 13, 2012, (effective September 24, 2012). Plaintiffs' Trial Ex. 7 & 8, electronic page 13-16.

Additionally, the Debtor committed the damage to the Plaintiffs' fence posts on November 22, 2009, two years after the Plaintiffs commenced their State Court Action against the Debtor. Plaintiffs' Trial Ex. 42, electronic page 330. Likewise, the Debtor was charged with "Harassment – Subject Other to Physical Contact [sic]," which occurred on June 1, 2011. Plaintiffs' Trial Ex. 43, electronic page 336. The Debtor was found guilty of both offenses. These actions demonstrate that the Debtor continued his course of conduct against the Plaintiffs after he had notice of the emotional distress he had inflicted, and was continuing to inflict, on the Plaintiffs. I find that the continuation of the Debtor's actions subsequent to the filing of the State Court Action by the Plaintiffs demonstrates a willfulness on the part of the Debtor.

Therefore, I conclude that the Debtor acted willfully, with the purpose of injuring the

Plaintiffs, and in fact, did cause injury to both the Plaintiffs and their property. Next, I will discuss whether or not the Debtor's actions meet the requirements of malicious injury.

### 2. Were the Debtor's actions malicious?

The Plaintiffs allege that the Debtor's actions were malicious because the injuries to the Plaintiffs and their property were wrongful and without just cause. Malice involves a wrongful act, done intentionally, which necessarily causes injury, and is done without just cause or excuse. *In re Webb*, 525 B.R. at 235. Malice may be implied based on the nature of the wrongful act, but the willfulness of the act must first be established. *Id*.

I have already determined that the Debtor's acts were willful. The only requirement remaining is to determine whether or not his acts were wrongful. Again, the evidence produced at trial – testimony and exhibits – demonstrates that the Debtor undertook actions which were substantially certain to result in an injury to the Plaintiffs. The Debtor brought ten complaints in the Court of Common Pleas, apparently without just cause. The complaints were either withdrawn, dismissed, or the Plaintiffs were found not guilty. As previously discussed, the only exception to this was the default judgment for an action in ejectment to locate the boundary line between the Debtor's and Plaintiffs' properties. Plaintiffs' Trial Ex. 27, electronic page 127-28. Further, the Debtor made approximately thirty complaints to the Police and Township officials. Most of these, from the evidence introduced at the two days of trial, appeared to be unsupported, were ultimately dropped, or resulted in no charges against the Plaintiffs. Plaintiffs' Trial Ex. 30, electronic page 155-258.

Although the malicious use of civil proceedings is not a claim before me, the Debtor's conduct for purposes of this nondischargeability proceeding under § 523(a)(6) is analogous to

the wrongful act of malicious use of civil proceedings under Pennsylvania law. It is wrongful to initiate civil proceedings without probable cause and primarily for a purpose other than that of securing the proper discovery of the claim in which the proceedings are based. *Bobrick Corp. v. Santana Products, Inc.*, 698 F.Supp.2d 479, 491 (M.D.Pa. 2010) *aff'd sub nom. The Bobrick Corp. v. Santana Products, Inc.*, 422 F.App'x 84 (3d Cir. 2011); *see also*, 42 Pa. Cons. Stat. § 8351.

Similar to an action for malicious use of civil proceedings, the Plaintiffs have established that the Debtor's complaints and proceedings against them were without just cause. Malicious use of civil proceedings is wrongful, as is the vexatious litigation commenced by the Debtor. I conclude that based on the trial record, the Debtor's actions were wrongful and meet the requirement of malice under § 523(a)(6).

The Debtor raised the defense of "just cause" at trial. To me, this is analogous to a defense to other intentional torts, such as assault or battery. The Restatement (Third) of Torts lists several defenses to intentional torts. Restatement (Third) of Torts: Phys. & Emot. Harm § 5 (2010). For example, the defenses "may include consent, self-defense, defense of third persons, protection of land and chattels, and privileges relating to discipline" which the law identifies as circumstances when the intentional infliction of physical harm is either justifiable or excusable. *Id.*; *see also*, *Barnes v. Am. Tobacco Co. Inc.*, 984 F.Supp. 842, 869-70 (E.D.Pa. 1997) *aff'd sub nom. Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) (consent); *Cooper ex rel. Cooper v. Lankenau Hosp.*, 616 Pa. 550, 564, 51 A.3d 183, 191 (2012) (consent); *Dicenzo v. Berg*, 16 A.2d 15 (Pa. 1940) (consent and apparent assent); *Hughes v. Babcock*, 37 A.2d 551 (Pa. 1944) (defense of property); *Kitay v. Halpern*, 158 A. 309 (Pa.Super. 1932) (use of reasonable force).

14

I cannot find from the record, and no evidence was produced by the Debtor, that the Plaintiffs consented to the Debtor's course of conduct. Nor can I determine that the Debtor acted in some form of self-defense. Self-defense is traditionally viewed in the context of the infliction of bodily harm, not emotional distress. Likewise, the defense of third persons or privileges relating to discipline (which apply in a military context) do not apply on this record.

Granted, the Plaintiffs posted a sign on their garage facing the Debtor's property allegedly calling the Debtor a "Crazy Jackass." This was unwise, but I cannot find that it constitutes just cause for the Debtor's actions. Nor do I find just cause because the Plaintiff, Mr. Link, showed the Debtor the middle finger while cutting the grass on the Plaintiffs' own lawn – when the Debtor's filming of the Plaintiff, Mr. Link, gave rise to such response. These minimal responses by the Plaintiffs to the Debtor's intentional, systematic, and continuous attempts to cause emotional distress do not rise to the level of just cause. Further, although the Debtor raised the Plaintiffs' own actions as an excuse for the Debtor's conduct, I cannot determine that the Plaintiffs' actions fit within a recognized defense to intentional torts.

Therefore, I find that the Debtor had the specific intent to injure the Plaintiffs through unsupported, spurious complaints and by damaging the Plaintiffs' fence posts. Cumulatively, the Debtor's course of conduct was wrongful, intentional, caused the Plaintiffs emotional injury, and damaged their property. Based upon this, I conclude that the elements for nondischargeability under § 523(a)(6) have been proven by a preponderance of the evidence.

15

**IV. Conclusion**

A judgment providing for a finding in favor of the Plaintiffs regarding the nondischargeability of the debt represented by the non-jury verdict in the State Court Action will be entered.

By the Court,

*/s/ Robert N. Opel, II*

Date: June 30, 2015

Robert N. Opel, II, Bankruptcy Judge

(BI)